IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

THE GOOD DROP LLC,

                   Plaintiff,

    vs.

ROBERT D. HAYES and RHC
SELECTIONS, LLC,

                   Defendants.

No. 6:15-cv-00268-AA
OPINION AND ORDER

_____

Emmanuel Benjamin Miller
The Steele Law Firm
125 NW Greeley Avenue
Bend, OR 97703

Nathan Gabriel Steele
The Steele Law Firm
1051 NW Bond Street, Suite 320
Bend, OR 97701
       Attorneys for plaintiff

Eric K. Helmy
Northwest Business Law Group, LLC
1300 SW Park Avenue #1009
Portland, OR 97201
       Attorney for defendants

Page 1 - OPINION AND ORDER

AIKEN, Judge:

In September 2014, Sarah Worley ("Worley") and her husband, Patrick (collectively, "the Worleys"), purchased plaintiff The Good Drop, LLC ("The Good Drop"), a wine shop located in Bend, Oregon. Defendant Robert Hayes ("Hayes") worked for plaintiff for two and a half years. His employment was terminated at the time of the sale. Three weeks later, Hayes filed Articles of Organization to establish defendant RHC Selections, LLC ("RHC"), another wine shop located in Bend. In this action, The Good Drop alleges Hayes and RHC used The Good Drop's confidential customer list, customer credit card information, and vendor information to solicit business away from The Good Drop, in violation of the federal Computer Fraud and Abuse Act, 18 U.S.C. §§ 1030 *et seq.*, and the Oregon Uniform Trade Secrets Act, Or. Rev. Stat. §§ 646.461 *et seq.*; disparaged The Good Drop to former customers, intentionally interfering with The Good Drop's business relations; and committed the tort of conversion by stealing confidential business information and thousands of dollars in wine from The Good Drop.[1]

Before the Court now are defendants' motion to strike, motion for summary judgment, and second motion for sanctions, as well as various related motions filed by both parties. For the reasons set forth below, defendants' motions to strike, for summary judgment, and for sanctions are denied.

---

[1] Worley is not a party to this action, but as the owner of plaintiff The Good Drop, she is central to much of this discussion in this opinion. Hayes and RHC are both named defendants but the factual allegations of the complaint focus primarily on Hayes. For clarity, in the sections addressing factual allegations, this opinion generally refers to The Good Drop, Hayes, and RHC by name rather then by party designation. In the sections addressing procedural matters or legal arguments, the opinion uses party designation.

Page 2 - OPINION AND ORDER

# BACKGROUND

I.    *Factual History*

Hayes worked for The Good Drop from February 2012 to September 2014, during which time the shop was owned by Dennis Murphy ("Murphy"). During his employment with The Good Drop, Hayes managed the shop and had access to inventory and confidential business information, including customer lists and credit card information. On September 16, 2014, Murphy sold The Good Drop to the Worleys. Although Hayes's employment with The Good Drop ended upon sale, he went to The Good Drop on a number of occasions to assist with the business transition.

The parties present two very different sides of the story. Because one of the issues addressed in this opinion is the admissibility of certain evidence, I provide here only a brief summary of their positions. The Good Drop alleges Murphy offered Hayes the opportunity to purchase the shop, but they could not reach an agreement on price. The Good Drop further asserts Hayes used its confidential business information, including the customer list and customer credit card files, to start and promote RHC, a competing business. The Good Drop also contends Hayes stole at least $15,000 worth of wine and used it as RHC's starting inventory. Finally, The Good Drop avers Hayes deliberately disparaged The Good Drop to its customers in an effort to convince those customers to patronize RHC instead.

Hayes, by contrast, alleges The Good Drop, through Murphy, misled him into believing he was a partial owner by telling Hayes he was working for a substantial equity stake in the business. Hayes contends The Good Drop, again through Murphy, betrayed him by selling the business to the Worleys without compensating him for his equity in the business and by making a sham offer to sell him the business at a price he could not afford. Hayes asserts he personally developed the business

Page 3 - OPINION AND ORDER

contacts and customer list he used to launch RHC, and disputes using any protected information belonging to The Good Drop. Finally, Hayes denies taking any wine from The Good Drop, and maintains the inventory used to start RHC came from his personal wine collection.

II.    *Procedural History*

In November 2015, about two weeks before the end of discovery, defendants filed a motion for summary judgment and two motions for sanctions or, in the alternative, to compel discovery. On January 20, 2016, this Court issued an order ("January 20 Order") denying the motions for sanctions, granting the alternative motion to compel discovery, and deferring consideration of the motion for summary judgment until after the close of discovery. After several extensions of the case schedule, discovery closed on May 22, 2016. Two weeks later, defendants filed a new motion for sanctions, asserting plaintiff had failed to comply with the terms of the January 20 Order. The parties also filed supplements to their summary judgment briefs. Finally, defendants filed a motion to strike two of the declarations accompanying plaintiff's supplement to its summary judgment response.

## STANDARDS

Summary judgment is appropriate if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party has the burden of establishing the absence of a genuine issue of material fact. *Id.*; *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party shows the absence of a genuine issue of material fact, the nonmoving party must go beyond the pleadings and identify facts which show a genuine issue for trial. *Celitex Corp.*, 477 U.S. at 324. "Summary judgment is inappropriate if reasonable jurors, drawing all inferences in favor of the nonmoving party, could return a verdict in

the nonmoving party's favor." *Diaz v. Eagle Produce Ltd. P'ship*, 521 F.3d 1201, 1207 (9th Cir. 2008).

## DISCUSSION

Because it is necessary to determine the contents of the record before ruling on the motion for summary judgment, I first address defendants' motion to strike. I then move on to analyze defendants' motion for summary judgment and second motion for sanctions.

I.    *Motion to Strike & Effect of Rule 30(b)(6) Deposition Testimony*

Defendants filed a motion to strike two declarations filed in conjunction with plaintiff's supplement to its response to the motion for summary judgment. Defendants support their motion to strike with two intertwined legal arguments. The first argument relates to the effect of Worley's testimony as the designated representative of The Good Drop pursuant to Federal Rule of Civil Procedure 30(b)(6). The second argument concerns the application of the sham affidavit rule.

Rule 30(b)(6) permits a party to serve a business or governmental entity with an oral deposition notice that "describe[s] with reasonable particularity the matters for examination." Fed. R. Civ. P. 30(b)(6). The notice triggers the entity's obligation to designate a person or persons to testify on its behalf as to "information known or reasonably available to the organization." *Id.* "Under this rule, 'companies have a duty to make a conscientious, good-faith effort to designate knowledgeable persons for Rule 30(b)(6) depositions and to prepare them to fully and unevasively answer questions about the designated subject matter.'" *Memory Integrity, LLC v. Intel Corp.*, 308 F.R.D. 656, 661 (D. Or. 2015) (quoting *Sprint Commc'ns Co., L.P. v. Theglobe.com, Inc.*, 236 F.R.D. 524, 527 (D. Kan. 2006)). Entities "have an obligation to present witnesses who are capable of providing testimony on the noticed topics regardless of whether the information was in the

witness's personal knowledge, provided that the information is reasonably available to the corporation." *Id.*

One of the main arguments in defendants' first two motions for sanctions was that plaintiff failed to fulfill its obligation to adequately prepare its designated representative, Worley, to testify to the institutional knowledge of The Good Drop. The deposition transcripts reveal Worley came to the deposition prepared to testify primarily, and perhaps exclusively, about The Good Drop's business practices after she became the owner in September 2014. *See, e.g.*, Worley Dep. 18:4-11 (stating she was "prepared to testify . . . as representative of the company" about events from mid-September 2014 to the date of the deposition). In the January 20 Order, this Court found plaintiff "ha[d] not satisfied its discovery obligations in some respects," in part by failing to "adequately prepare its designated representative . . . for the Rule 30(b)(6) deposition." Doc. 45 at 3. Specifically, plaintiff should have "undertake[n] a more significant effort to obtain information from Murphy about The Good Drop's recordkeeping and security policies." *Id.*

Relying on the January 20 Order, defendants argue plaintiff should be bound by Worley's deposition testimony regarding The Good Drop's security and recordkeeping policies, including statements that she was "not aware" how The Good Drop kept preorder slips before she acquired the business, Worley Dep. 85:7-10; that she "c[ould]n't answer" how The Good Drop "chose to store" private vendor information, Worley Dep. 68:4-21; and that she was "unaware of how [The Good Drop] kept password information" before she purchased the business, Worley Dep. 88:6-10. Defendants assert making that testimony binding precludes the consideration of the declaration of Murphy, the prior owner of The Good Drop. Murphy's declaration includes a statement that client lists were "stored under password protection on Good Drop's Constant Contact Account" during the

time of Hayes's employment with Good Drop. Murphy Decl. ¶ 5. With respect to the alleged theft of wine inventory, defendants assert Worley's failure to elaborate on the calculation of inventory losses beyond stating "Good Drop took inventory after taking over the shop," Worley Dep. 100:16-23, bars consideration of her subsequent statement in a declaration that "$36,752.59 in inventory was 'removed'" between June 2012 and September 2014, Worley Decl. ¶ 7.

There is no Ninth Circuit law on whether a designated representative's testimony at a Rule 30(b)(6) deposition is binding on the entity, and federal courts are split on this question. *See MKB Constructors v. Am. Zurich Ins. Co.*, 49 F. Supp. 3d 814, 829 n.11 (W.D. Wash. 2014) (collecting cases and explaining various approaches). District courts in the Ninth Circuit generally have rejected the strictest approach, which makes Rule 30(b)(6) testimony binding in the sense of a legal admission. *See, e.g.*, *Icon Enters. Int'l, Inc. v. Am. Prods. Co.*, 2004 WL 5644805, *6 (C.D. Cal. Oct. 7, 2004) ("[A] corporation is 'bound' by its Rule 30(b)(6) testimony" only in the sense that "the witness has committed to a position at a particular point it time. It does not mean that the witness has made a judicial admission that formally and finally decides an issue." (quoting *W.R. Grace & Co. v. Vikase Corp.*, 1991 WL 211647, *2 (N.D. Ill. Oct. 15, 1991)) (quotation marks omitted). Instead, district courts in this circuit have taken a compromise approach to the effect of Rule 30(b)(6) testimony, holding that it "may be contradicted so long as any material change is not made without a reasonable basis." *Medlock v. Taco Bell Corp.*, 2016 WL 430438, *13 (E.D. Cal. Feb. 4, 2016).

Treating Worley's deposition testimony as a binding admission is not warranted for two reasons. First, I decline to adopt a harsh rule out of step with other district courts in this circuit. Second, the extent to which a designated representative's testimony fairly may be given binding effect is directly related to the deposing party's compliance with the requirement to describe "with

Page 7 - OPINION AND ORDER

reasonable particularity" the subjects to be addressed at the deposition. Fed. R. Civ. P. 30(b)(6). Here, the deposition notice did not specifically notify plaintiff its representative would be required to testify about procedures for keeping confidential information secure. The only topic description that encompasses such procedures broadly states the representative should be prepared to testify regarding "[a]ll allegations presented in Plaintiff's complaint, and the totality of Plaintiff's institutional knowledge of the factual bases underlying all of the allegations of Plaintiff's complaint." Doc. 22-6 at 3. Even assuming it would be appropriate to make Rule 30(b)(6) rules binding admissions under some circumstances, defendants' failure to meet the particularity requirement of Rule 30(b)(6) would render application of such a harsh rule inappropriate here. Accordingly, Worley's testimony about The Good Drop's security protocols is binding only in the sense that it represents her personal knowledge of those protocols at the time of the deposition.

Defendants also argue the Worley and Murphy declarations should be stricken under the sham affidavit rule, which prevents a party from creating "an issue of fact by an affidavit contradicting his prior deposition testimony." *Yeager v. Bowlin*, 693 F.3d 1076, 1080 (9th Cir. 2012) (citations and quotation marks omitted). The rule is to be applied with caution "because it is in tension with the principle that the court is not to make credibility determinations when granting or denying summary judgment." *Id.* (quotation marks omitted). Before striking an affidavit pursuant to the rule, the district court must make a "factual determination that the contradiction is a sham" and that the inconsistency is clear and unambiguous. *Id.* The doctrine is most commonly applied where there is reason to believe the deposed party was evasive in order to gain a litigation advantage. *See id.* (upholding application of the sham affidavit rule when the deponent claimed no memory of "difficult-to-forget events in the recent past . . . such as . . . his involvement in a plane crash," only

to muster a "sudden ability to recall specific facts" about those same events when making his declaration in opposition to summary judgment).

None of the requirements of the sham affidavit rule are met here. First, Murphy's declaration cannot possibly be inconsistent with *his own* deposition testimony because he was never deposed. Defendants have cited no authority supporting application of the sham affidavit rule to strike a declaration because it is inconsistent with the deposition of *someone else*. Second, with the possible exception of the valuation of wine inventory losses as discussed below, there is no clear, unambiguous conflict between Worley's deposition testimony and either declaration. Although Worley disclaimed knowledge of The Good Drop's methods for keeping preorder slips, vendor information, and passwords secret prior to her purchase of the business, she consistently testified that the customer list was kept in a password-protected Constant Contact account. Worley Dep. 52:11-14; 85:20-23. That testimony is fully consistent with Murphy's statements about the customer list, as well as with Hayes's deposition testimony. Third, with respect to the inventory loss, any conflict between Worley's deposition testimony and declaration statements is insufficient to justify application of the sham affidavit rule. Worley's declaration arguably clarifies and elaborates on her deposition testimony by providing a more precise and updated inventory assessment. At trial, defendants are free to use Worley's arguably inconsistent statements for impeachment purposes — but that is a credibility argument they must make to the jury.

Neither plaintiff's failure to fully prepare Worley for the Rule 30(b)(6) deposition nor the sham affidavit rule justifies striking the Worley and Murphy affidavits. Defendant's motion to strike is denied.

Page 9 - OPINION AND ORDER

II.    *Merits of Summary Judgment Arguments*

With the record defined to include the Worley and Murphy declarations, I now turn to the merits of defendants' summary judgment motion.  Defendants argue they are entitled to summary judgment on the federal computer fraud claim (first claim for relief) because plaintiff has not submitted any evidence showing Hayes accessed plaintiff's computer without authorization. However, the statute also prohibits "exceeding authorized access" to a computer.  18 U.S.C. § 1030(a)(1).  Exceeding authorized access "means to access a computer with authorization and to use such access to obtain or alter information in the computer that the accesser is not entitled to so obtain or alter."  *Id.*  § 1030(e)(6).  Plaintiff has introduced evidence that Hayes never was authorized to use the customer list for his own benefit; that Hayes sent the customer list from his business email account to his private account before leaving The Good Drop; and that there is 94 percent overlap between The Good Drop's and RHC's email distribution lists.  Reasonable jurors could conclude that Hayes exceeded authorized access to plaintiff's computer within the meaning of the statute.

Next, defendants contend the Oregon trade secrets claim (second claim for relief) fails because plaintiff has not identified any trade secrets.  Under Oregon law, a trade secret is

> information, including a drawing, cost data, customer list, formula, pattern, compilation, program, device, method, technique, or process that:
>
> (a) Derives independent economic value, actual or potential, from not being generally known to the public or to persons who can obtain economic value from its disclosure or use; and
>
> (b) Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

Or. Rev. Stat. § 646.461(4).  Defendants argue The Good Drop's customer list does not qualify as a trade secret because plaintiff has not shown it took reasonable efforts to keep the list confidential.

Page 10 - OPINION AND ORDER

However, ample evidence in the record shows that the customer list was kept in a password-protected electronic file. Whether that protection constitutes a reasonable effort to maintain the list's secrecy is a question of fact that cannot be resolved at the summary judgment stage.

Defendants assert plaintiff's tortious interference with business relations claim (third claim for relief) cannot survive summary judgment because plaintiff has not introduced evidence of wrongfulness. In a tortious interference case, the plaintiff must show that the

> interference . . . is wrongful by some measure beyond the fact of the interference itself. Defendant's liability may arise from improper motives or from the use of improper means. They may be wrongful by reason of a statute or other regulation, or a recognized rule of common law, or perhaps an established standard of a trade or profession.

*Top Serv. Body Shop, Inc. v. Allstate Ins. Co.*, 582 P.2d 1365, 1371 (Or. 1978). Here, as explained above, plaintiff's computer fraud and trade secrets claims survive summary judgment. If defendants violated either law in the course of interfering with plaintiff's business relations, that violation would constitute improper means sufficient to make out the wrongful means/intent prong of plaintiff's tortious interference claim. Therefore, summary judgment is unwarranted on the third claim for relief.

With respect to plaintiff's conversion claim (fourth claim for relief), defendants assert plaintiff has failed to identify "chattel" over which defendants might have "intentionally exercised dominion or control." *Morrow v. First Interstate Bank of Or., N.A.*, 847 P.2d 411, 415 (Or. Ct. App. 1993). But plaintiff has identified a number of possible chattels: the customer list, wine inventory, vendor information, and the customer credit card information in the manila folder. Plaintiff's conversion claim survives defendants' motion for summary judgment.

Finally, defendants contend they are entitled to summary judgment with respect to plaintiff's

Page 11 - OPINION AND ORDER

request for injunctive relief. In support of this argument, defendants rely exclusively on Worley's deposition testimony that "I can't evidence future conduct from Robert. I don't know what his future conduct will be." Worley Dep. 147:18-22. Contrary to defendants' suggestion, plaintiff need not predict defendants' precise future actions to meet the standard for injunctive relief; the question is whether plaintiff is likely to suffer irreparable harm absent that relief. "Evidence of threatened loss of prospective customers or goodwill certainly supports a finding of the possibility of irreparable harm." *Stulbarg Int'l Sales Co., Inc. v. John D. Brush & Co., Inc.*, 240 F.3d 832, 841 (9th Cir. 2001). Accordingly, all plaintiff's claims survive summary judgment.[2]

III.    *Motion for Sanctions*

In the instant motion for sanctions, defendants assert plaintiff has violated every provision of the January 20 Order. They contend such egregious behavior calls for terminating sanctions. After careful review of the record, I find no evidence plaintiff has violated the January 20 Order and decline to award sanctions of any type.

A.    *Compliance with January 20, 2016 Discovery Order*

The January 20 Order stated:

> Plaintiff's conduct, at this point, does not rise to a level warranting the imposition of sanctions. Instead, the court grants defendants' alternative motion to compel discovery. In light of the protective order now in place, there should be no further barriers to production. Plaintiff is ordered to produce all non-privileged documents responsive to defendants' interrogatories, including but not limited to the logbook and inventory plaintiff already promised to produce. If plaintiff wishes to object to any of defendants' requests for production, the denial must be specific to the objectionable request. If plaintiff refuses to produce any documents on the grounds of privilege, it is ordered to produce a privilege log in accordance with the

---

[2] Because summary judgment is not warranted on any of plaintiff's claims, defendants' motion for summary judgment on their counterclaim for attorney's fees and costs also is denied.

Federal Rules.  If plaintiff fails to comply with these orders or otherwise does not participate in discovery in good faith, the court will entertain a renewed motion for sanctions.

Doc. 45 at 4-5.  Defendants contend plaintiff violated the January 20 Order by (1) asserting the same "canned" objection to numerous interrogatories and requests for production; (2) invoking privilege without providing a privilege log; (3) refusing to produce documents based on the absence of a protective order despite the fact that a protective order is now in place; (4) failing to produce any documents in response to four requests for production; (5) giving vague or evasive answers to three interrogatories; and (6) submitting only partial supplemental discovery in February 2016, requiring further supplementation in May 2016.

In its initial responses to defendants' requests for production, plaintiff asserted broad objections to defendants' interrogatories and requests with no further production or substantive response.  That was a problem because it left open the possibility plaintiff was using boilerplate objections as an excuse to withhold relevant discovery.  Here, plaintiff reasserts a number of the same objections, contending the requests are overbroad, vague, and/or unduly burdensome.  However, in response to reach request, plaintiff also avers that all responsive documents have been produced.  Plaintiff's responses comply with the terms of the January 20 Order.

Plaintiff's failure to produce a privilege log does not violate the January 20 Order.  A privilege log is only necessary if responsive documents are being withheld on the grounds of privilege.  Here, plaintiff has stated that all responsive documents have been produced, so a privilege log is unnecessary.  Plaintiff concedes that it included an objection to requests for production due to the absence of a protective order, but explains that objection was inadvertently left in the amended responses, which were revised from an earlier draft.  The Court will not award sanctions based on

Page 13 - OPINION AND ORDER

a clerical error.

Plaintiff's response to the instant motion for sanctions adequately explains its responses to the requests for production. Plaintiff represents its production is complete and there is no reason at this juncture to question that representation. Turning to the interrogatories, I find plaintiff's responses to interrogatories number 8 and 25 neither vague nor evasive. I agree part of plaintiff's response to interrogatory number 16 is vague. That interrogatory asks plaintiff to identify the factual bases for its allegations regarding Hayes's willfulness. The response states, in part, that Hayes's "statements at deposition provide further factual support for this contention." Pointing to a party's entire deposition is not a sufficiently specific response to an interrogatory. However, a single vague response to an interrogatory falls far short of the threshold warranting discovery sanctions, particularly in light of the fact that plaintiff *also* provided a specific response to the interrogatory by citing Hayes's alleged uploading of the client list to RHC's Mail Chimp account.

Finally, I find no evidence to support defendants' allegation plaintiff withheld documents or produced partial discovery in February 2016. Plaintiff did submit amended responses to the responses to the requests for production and interrogatories in May 2016; however, the primary changes from the previous versions of these documents appear to be new sentences clarifying that all responsive documents have been produced. Defendants do not allege plaintiffs produced any additional responsive documents after February 2016. Plaintiff appears to have complied with the terms of the January 20 Order in good faith. I conclude there is no reason to award any sort of sanctions at this time.

B.    *Conferral*

The lawyers vigorously dispute the adequacy of plaintiff's counsel's conferral on the instant

Page 14 - OPINION AND ORDER

motion for sanctions. I see no way to resolve the dispute short of an evidentiary hearing on conferral. Under the circumstances, such a hearing would be an egregious waste of the Court's and the parties' time and resources. I therefore assume without deciding that conferral here met the requirements of Local Rule 7-1.

## CONCLUSION

Plaintiff's Motion to Strike Declaration of Dennis Murphy (doc. 56) is GRANTED; the first Declaration of Dennis Murphy (doc. 54-4) is stricken and the second Declaration of Dennis Murphy (doc. 55) is substituted in its stead. Defendants' Motion to Strike Declarations of Dennis Murphy and Sarah Worley (doc. 61) is DENIED. Defendants' Motion for Summary Judgment (doc. 20, as supplemented by doc. 57) is DENIED.

Defendants' Motion to Permit Reply on Defendant's Second Motion for Discovery Sanctions (doc. 59) and plaintiff's Motion to Strike Reply on Defendant's Second Motion for Discovery Sanctions are GRANTED IN PART and DENIED IN PART as follows: a reply is permitted addressing only the adequacy of conferral. All portions of the Reply on Defendants' Second Motion for Discovery Sanctions (doc. 60) are stricken except Argument Section 1, located at pages 2-5 of the brief. Defendants' Second Motion for Discovery Sanctions (doc. 52) is DENIED. Plaintiff's request for attorney's fees in connection with that motion is DENIED.

The parties' request for oral argument is DENIED as unnecessary.

IT IS SO ORDERED.

Dated this ___1ST___ day of August 2016.

_____
Ann Aiken
United States District Judge

Page 15 - OPINION AND ORDER